Jones, Chief Judge,
delivered the opinion of the court:
This case involves a dispute as to the proper basis for the computation of the overtime pay of two naval architects, plaintiffs herein, employed by the defendant. There being no controversy as to the material facts, both parties have moved for summary judgment.
Plaintiffs are employed as naval architects at the Naval Shipyard, Portsmouth, Virginia. On June 30, 1956, Mr. Dale was serving in the highest step of grade GS-11. Mr. Stroud was serving in the third step of grade GS-9.
Effective July 1, 1956, the Civil Service Commission authorized an increase in the minimum rate of pay for naval architects to the sixth step of grade GS-9 and the fourth step of grade GS-11.[1] 21 Fed. Reg. 5144. This action was taken by the Commission pursuant to 5 U. S. C. § 1133 (1952 Ed. Supp. V)[2] which provides that,
Whenever the Commission shall find (1) that a sufficient number of qualified eligibles for positions in a given class cannot be secured m one or more areas or locations at the existing minimum rate for such class, and (2) that there is a possibility that a sufficient number of such eligibles can be secured by increasing the minimum rate for such class in such areas or locations to one of the higher rates within the grade in which such class is placed, the Commission may establish such higher rate as the minimum rate for that class in each area or location concerned. [Emphasis supplied.]
The section further provides that any such revision made by the Commission “shall have the force and effect of law.”
As the result of the Commission’s action, Stroud’s basic rate of compensation was increased from the third to the sixth step of grade GS-9. However, since Dale was already being compensated at the highest step of grade GS-11, his basic rate was not affected.
Thereafter, plaintiffs performed overtime services for defendant. They were compensated for these services on the basis of one and one-half times the minimum scheduled rate *162 for grade GS-9 as that rate is generally established without regard to the fact that the minimum rate of compensation for employees such as plaintiffs had been increased by the Commission to the sixth step of grade GS-9.[3] This computation was made pursuant to 5 U. S. C. § 911 (1952 Ed. Supp. V) [4] which authorizes payment of overtime compensation and which provides that,
For each officer and employee whose basic compensation is at a rate which exceeds the minimwn scheduled rate of basic compensation provided for grade GS-9 in the Glassification Act of 1949, as amended, the overtime hourly rate of compensation shall be an amount equal to one and one-half times the hourly rate of suoh minimum scheduled rate of basic compensation, * * * [Emphasis supplied.]
Plaintiffs contend that the “minimum scheduled rate of basic compensation provided for grade GS-9” so far as they are concerned is the sixth step of grade GS-9 in view of the action of the Civil Service Commission pursuant to 5 U. S. C. § 1133; that, therefore, their overtime compensation must be computed with reference to that increased basis. We cannot agree.
The basis upon which computation of plaintiffs’ overtime compensation is to be made is established by 5 U. S. C. § 911 which we have quoted above. Section 911 is quite unambiguous. It states that the computation is to be made upon the basis of “the minimum scheduled rate of basic compensation provided for grade GS-9 in the Glassification Act of 1949, as amended”. There is only one “Classification Act of 1949, as amended,” and there is only one “minimum scheduled rate” for grade GS-9 provided for therein. That rate is $5,440 per annum,[5] the rate used by defendant in computing plaintiffs’ overtime pay. What plaintiffs would have us do is add a phrase so that section 911 would provide for com *163 putation of overtime pay on the basis of the minimum scheduled rate for grade GS-9 as provided for in the Classification Act of 1949, as amended, or as that rate may be established from time to time by the Civil Service Commission pursuant to 5 U. S. C. § 1133. Congress did not insert such an alternative in the section, nor is there any basis for supposing that such was intended.
Section 911 establishes a uniform pattern for the computation of the overtime pay of Federal employees whose basic rate for compensation exceeds the minimum rate scheduled for grade GS-9.[6] All such employees, whether they are serving in grade GS-9 or grade GS-18, receive overtime pay based upon the minimum scheduled rate for grade GS-9. This pattern is wholly consistent with, and is merely a continuation of, the policy established by Congress in the Federal Employees Pay Act of 1945 [7] that overtime compensation for employees in the higher wage brackets should neither be commensurate with, nor based upon, their higher basic rates of compensation.[8] The plaintiffs, were we to adopt their position, would form a single exception to this uniform policy.
Section 1133, on the other hand, was enacted, not with reference to the overtime provisions of section 911, but rather with reference to the requirement that “All new appointments * * * be made at the minimum rate of the appropriate grade” contained in 5 U. S. C. § 1131. As was pointed out by the Conference Report accompanying section 1133, “Under section 801 of the Classification Act of 1949, [5 U. S. C. § 1131] each original appointment to any position *164 under such act must be at the minimum per annum rate of the grade in which such position is classified. At times the viiftexibility of this provision has constituted an impediment to the recruitment of a sufficient number of qualified eligibles to fill positions in a given class in certain areas.” Conf. Rpt. No. 2665, accompanying H. R. 2263, 83d Cong., 2d Sess., Aug. 16, 1954, p. 16. [Emphasis supplied.] It is apparent, therefore, that Congress, in enacting section 1133, considered only that it was providing for the modification of section 1131 in order to place the Government in a more favorable competitive position in the recruitment of new employees by establishing a method whereby starting salaries could be increased above those normally provided by law. It does not at all appear that Congress contemplated or intended that section 1133 should, as well, provide for modification of the uniform policy for the computation of overtime pay contained in section 911.
Plaintiffs have placed a heavy reliance in support of their position upon the fact that section 1133 provides that any actions taken by the Commission pursuant thereto “shall have the force and effect of law.” Of course, such actions do “have the force and effect of law” in the sense that they modify the existing law contained in section 1131 as we have described above, but such a general provision is of no aid in determining what modifications of law were intended by the Congress.
In view, therefore, of what seems to us to be the clear and unambiguous language of section 911 itself; in view of the uniform pattern for the computation of overtime pay established thereby; and, in view of the obviously limited purpose for which section 1133 was enacted, we can only conclude that defendant was correct in its computation of the overtime pay due the plaintiffs. Accordingly, defendant’s motion for summary judgment is granted and plaintiffs’ similar motion is denied.
Plaintiffs’ petition is dismissed.
It is so ordered.
Laramore, Judge; MaddeN, Judge; Whitaker, Judge; and Littleton, Judge, concur.

 This had the effect, insofar as naval architects were concerned, of modifying the general rule that “All new appointments shall be made at the minimum rate of the appropriate grade.” 63 Stat. 969 (1949), 6 U. S. C. § 1131.

 63 Stat. 970 (1949), as amended, 68 Stat. 1106 (1954).

 The minimum scheduled rate of basic compensation for grade GS-9 is $5,440 per annum; for the sixth step of grade GS-9, the basic rate of compensation is $6,115 per annum. 69 Stat. 172 (1955), 5 U. S. C. § 1113 (1952 Ed. Supp. V).

 68 Stat. 1109 (1954).

 When section 911 was enacted in 1954, the minimum scheduled rate for grade GS-9 was $5,060 per annum (65 Stat. 612 (1951)) ; the present rate was established by the Act of dune 28, 1955, 69 Stat. 172.

 The section also provides a method of computing overtime pay for those whose basic rate of compensation is less than the minimum for grade GS-9.

 59 Stat. 295, 296, 297.

 This policy apparently attempts to equate the position of supervisory and executive Federal employees with that of their counterparts in private industry who, under usual practice, do not receive any overtime pay. However, since the Government does not have available such devices as lump-sum salary adjustments and various hinds of bonuses which private industry generally uses to compensate its higher-paid employees, a restricted overtime compensation provision was felt necessary to equalize the position of the Federal employees. See S. Rpt. No. 1992, 83d Cong., 2d Sess., July 28, 1954, pp. 16, 27, 81. See also, Hearings Before the Committee on Civil Service, United States Senate, on S. 807, 79th Cong., 1st Sess., April — May, 1945, pp. 48-50, 120-121.